## Case No. 9,732.

### In re MONTGOMERY.

[12 N. B. R. 321;[1] 2 Cent. Law J. 440.]

District Court, D. Indiana. May 4, 1875.

BANKRUPTCY—AMENDED ACT—PREFERENCES ATTACKED PRIOR TO DECEMBER 1, 1873 — MORTGAGE GIVEN BEFORE PASSAGE OF AMENDED ACT.

1. The amendatory act of June 22, 1874 [18 Stat. 178], does not apply to preferences and conveyances which are attacked in the course of proceedings in bankruptcy begun prior to December 1, A. D. 1873, and within two years after the commencement thereof.

2. The provision in section 11 of the amendment, which enacts that nothing contained in section 35 of the original act [of 1867 (14 Stat. 534)] shall be construed to invalidate any security taken in good faith at the time of making a loan, is only declaratory of what the law was before the passage of the amendment. Before the original act was amended, a mortgage given to secure a loan made at the time, in good faith, was valid, even though the mortgagor was insolvent at the time of executing the same, and the party making the loan had knowledge of the fact.

In 1871, Henry Monyhan loaned the bankrupt [Milton Montgomery] three hundred dollars, and took his note therefor. This debt was unpaid in March, 1873, when Monyhan loaned the bankrupt two hundred dollars more, for which the bankrupt executed another note, and promised to secure the whole debt by the execution of a mortgage on his real estate. He did not return with the mortgage at the appointed time, and Monyhan brought suit against him. Pending this suit, the bankrupt brought a mortgage to Monyhan at Lancaster, on April

---

[1] [Reprinted by permission.]

10, 1873, which was considered defective. Monyhan and the bankrupt then went together to Salem, where, at the office of Prow, who was Monyhan's attorney, on April 11, 1873, the bankrupt executed and delivered his note to Monyhan for one thousand dollars, and a mortgage, to secure the payment of this note, and another for five hundred dollars, which was executed at the same time, but was not delivered. This note for one thousand dollars was in lieu of the two notes for three hundred dollars, and two hundred dollars, which were then surrendered to the bankrupt. The difference between the aggregate amount of these notes and accrued interest, and one thousand dollars, was at this time loaned the bankrupt by Monyhan. The remainder of the fifteen hundred dollars was never loaned the bankrupt. The bankrupt was insolvent at the time, and had been so for some time previous. His property was encumbered by liens, suits were pending against him in the courts, he was not paying his debts, and in the community where he lived he was generally reputed to be in failing circumstances and insolvent. On July 24, 1873, a petition in bankruptcy was filed against him, and adjudication of bankruptcy was subsequently had thereon. On October 3, 1873, Monyhan proved his debt against the estate of the bankrupt, claiming the mortgage aforesaid as security therefor. Exceptions thereto were filed August 18, 1874, by James Reynolds and George H. Smith, who are creditors of said bankrupt, and whose debts have been duly proven against his estate in bankruptcy, and a re-examination of the claim of Monyhan was had, in the course of which the foregoing facts were elicited.

By Mr. Register BUTLER:

The bankrupt law provides that the transfer of property by an insolvent debtor, within a specified period of time before the filing of a petition in bankruptcy by or against him, and under other circumstances which are also specified in the law, is fraudulent and void. The transfer becomes absolutely void upon the filing of the petition in bankruptcy, and may be subsequently set aside as such at the instance of the assignee. The only limitation imposed by the law upon suits for this purpose, is that contained in section 2, which provides that they shall be brought within two years after the cause of action accrues. The cause of action accrues with the filing of the petition in bankruptcy. Sections 14 and 38. These provisions, which govern suits by assignees to set aside fraudulent conveyances. are substantially applicable to proceedings by an assignee or a creditor who has proved his debt under section 22 of the law, and rule 34 of the supreme court (United States), to have the court reject claims which are alleged to be "founded in fraud, illegality, or mistake," when the alleged fraud or illegality consists in the assertion of a security for a debt which has been obtained in violation of them. If then, the mortgage executed by the bankrupt in this case to Monyhan, on the 12th of April, A. D. 1873, and claimed by the latter in his proof of debt against the estate of the bankrupt as security therefor, was void under the law as it existed on the 24th of July, A. D. 1873, when the petition in bankruptcy was filed, these creditors, Reynolds and Smith, acquired then a right to have it set aside as such, which they are at liberty to assert at any time within two years afterwards, unless they are divested of it by the amendatory act of June 22, A. D. 1874. Section 10 of the amendatory act substitutes the period of two months where it was four months, and the period of three months where it was six months, in section 35 of the original act, as the time within which a conveyance, violated in other respects, may be rendered absolutely void by the filing of a petition in bankruptcy by or against the person who has made the same; and suspends the operation of the act in the one case for two months and in the other case for three months after its passage. It was evidently the intention of congress, as revealed by the context of the amendment and its relation to the amended law, that these provisions should apply only to conveyances which should be attacked in the course of proceedings in bankruptcy, begun after the expiration of these periods of time. They obviously do not refer to proceedings in bankruptcy begun previous to their expiration. Section 11 of the amendment supplies the word "knowing," where "reasonable cause to believe" was understood in section 35 of the original act, and prohibits such a construction of this section as would invalidate a bona fide security for a contemporaneous loan, besides making some additional verbal changes, which it is unimportant to consider here.

It is a well settled principle of law, that a statute is to be so construed as to give it a prospective operation only, unless the intention of the legislature to make it retroactive is clearly and unambiguously expressed, or necessarily implied [Harvey v. Tyler] 2 Wall. [69 U. S.] 347; [McEwen v. Den] 24 How. [65 U. S.] 244; [U. S. v. Heath] 3 Cranch [7 U. S.] 413. There is nothing in the terms of these sections of the amendment, which indicates an intention on the part of its framers, to have them apply to cases begun before its passage, or from which such an intention is necessarily inferred, and in the absence of any positive expression or necessary implication to this effect, they must be considered as prospective only. The language employed in other sections of the amendatory act, and especially in section 17, by which the provisions of that section are made expressly applicable to "cases of bankruptcy now pending, or to be hereafter pending," etc., seems to denote that the general provisions of the act were not intended to apply to cases pending

at the time of its passage. Confirmatory of this view is the clause in section 12, by which its provisions are made retroactive as to cases of involuntary bankruptcy begun since December 1, 1873. Here the intention of the legislature is clearly expressed, and it is reasonable to presume that had a like intention existed with reference to other sections, it would have been expressed with legal clearness. This section, as well as section 11, makes actual knowledge by the person to whom a conveyance is made, of an intended fraud on the bankrupt law, one of the essentials of a fraudulent conveyance, and extends the application of its provisions to all involuntary cases begun since December 1, 1873. It thus excludes any construction which would bring within its purview involuntary cases commenced before that time. Such was the opinion of Hopkins, J., in Hamlin v. Pettibone [Case No. 5,995]. This being an involuntary case, which was begun prior to December 1, 1873, section 12 is consequently inapplicable to it. The principles of construction which have been here applied to the interpretation of sections 10, 11, and 12 of the amendment, have been fully approved in the consideration of other sections thereof. Section 9, which modifies the conditions of discharge, as they existed in the original act, was held, in Re Perkins [Case No. 10,983], to apply only to cases begun after its passage. Such, also, was the opinion of Blatchford, J., in Re Francke [Id. 5,046]. Moreover, the construction which was given section 9 in Re Perkins, supra, has been already adopted by this court, and, for this reason, the question under present discussion may be regarded as virtually settled in this district; for the application to other sections of the amendment, of the principles on which that decision was based, must result in giving them the construction which is claimed for them.

The case of Singer v. Sloan [Case No. 12,-899], which is cited by counsel for Monyhan, is not in point, as the petition in bankruptcy against Towle was filed since December 1, 1873. The court especially says that "it is not necessary, for the purposes of this demurrer, to decide whether cases brought, or acts done prior to said December, are to be controlled by the amendment. To avoid all doubt as to the views of the court, it is now held that said section 11 of the act of 1874 controls all cases brought since December 1, 1873." This case was decided by the district court for the Eastern district of Missouri. The circuit court for that district had already decided, in Re King [Case No. 7,781], that section 9 of the amendment applies to pending cases, and the district court in the case cited, says, "The same reasoning which produced those rulings (i. e., in Re King, supra), would exact the construction now given." The converse of this proposition is equally true, and where, as in this district, the court has held that section 9 does not

apply to pending cases, it may be said that the precedent "exacts" a like construction of the sections affecting fraudulent conveyances. If these sections are held to apply to cases of the kind under consideration, vested rights are thereby destroyed, and contracts are made good which were absolutely void before their enactment. Proceedings in involuntary bankruptcy are very frequently instituted for the purpose of recovering property fraudulently conveyed, and compelling an equal division of it among all creditors. One of the acts of bankruptcy charged in the petition against the bankrupt in this case, is the mortgage to Monyhan, which is in controversy. In Steamship Co. v. Joliffe, 2 Wall. [69 U. S.] 450, Mr. Justice Field speaking for the court, it was held that when a right arises under, or is given by a statute, and "it has been so far perfected that nothing remains to be done by the party asserting it, the repeal of the statute does not affect it or an action for its enforcement. It has become a vested right which stands independent of the statute." This case being therefore governed by the law in existence when the petition in bankruptcy was filed, it remains to be ascertained whether, upon the facts adduced in evidence, the mortgage claimed by Monyhan as security for his debt, is in violation of it. It was executed within the four months preceding the filing of the petition in bankruptcy. It is conceded that the bankrupt was insolvent when it was executed. The legal effect of the mortgage was to give Monyhan a preference over other creditors as to part of his debt, and to prevent the distribution of the mortgaged property under the bankrupt law and defeat the operation thereof, and the bankrupt must, therefore, be presumed to have intended these results of his acts.

The only other point to be determined is whether or not Monyhan had reasonable cause to believe the bankrupt was insolvent, and that the mortgage was in fraud of the bankrupt law. The evidence shows that such a state of "facts and circumstances were known to Monyhan as clearly ought to have put him, as a prudent man, upon inquiry." Buchanan v. Smith, 16 Wall. [83 U. S.] 277. He might have ascertained the insolvency of the bankrupt by reasonable inquiry, and he must, therefore, be held to have had reasonable cause to believe that the bankrupt was insolvent. Id. These were matters of common notoriety and of public record, and there were proceedings in the courts which Monyhan personally, or by his attorney (with whose knowledge he is chargeable), must be presumed to have known, which were in fact sufficient of themselves to afford reasonable cause for this belief. The mortgage itself, under all the circumstances of its execution, was out of "the usual and ordinary course of business of the debtor," and, as such, was "prima facie evidence of fraud." Section 35. Commenting on this provision of the law, Hall, J., said, in Graham v. Stark [Case No.

5,676], "This prima facie evidence is present to any creditor who accepts a security in any case to which the provision is applicable; and unless the creditor has evidence sufficient to repeal this legal presumption, he has reasonable cause to believe that the security is fraudulent and void under the bankrupt act."

For the foregoing reasons, it is the opinion of the register that the mortgage in controversy is fraudulent and void under the provisions of the bankrupt law applicable thereto, and that the exceptions to the proof of debt of Monyhan ought to be sustained.

John H. Butler, for creditors Reynolds and Smith.

Francis Wilson, for Henry Monyhan.

GRESHAM, District Judge. In 1871 Monyhan loaned the bankrupt three hundred dollars. About the 1st of March, 1873, Monyhan let the bankrupt have two hundred dollars more, and took his note, the latter at the same time agreeing to give a mortgage on his real estate to secure the payment of this note and other loans to be made in the future. The bankrupt failing to return with a mortgage as soon after the loan of the two hundred dollars as he had agreed to, Monyhan placed the two notes, given for the two loans, in the hands of Prow, an attorney at Salem, and suit was brought on them. On the 10th of April, suit having already been brought on the two notes, the bankrupt returned to Monyhan with a mortgage, which the latter refused to take, because he believed the same was defective in form. On the next day, April 11, Monyhan and the bankrupt went to Prow's office, where the mortgage in controversy was executed and delivered, the notes for the two hundred and three hundred dollar loans destroyed, and Monyhan loaned the bankrupt an additional sum, viz.: the difference between the two notes destroyed and interest, and one thousand dollars. For the purposes of this opinion, no further statement of the facts is necessary. The agreement to give a mortgage at the time the two hundred dollars was loaned was binding, and Monyhan might have enforced the same against the bankrupt. In equity the case stands as if the mortgage had been executed at the time of the loan. That part of section 11 of the supplemental act of June 22, 1874, which provides that nothing contained in section 35 of the original act shall be construed to invalidate any security taken in good faith at the time of making a loan, was only declaratory of what the law was before the passage of the amendment. Before the original act was amended, a mortgage given to secure a loan made at the time in good faith, was valid, even though the mortgagor was insolvent at the time of executing the same, and the party making the loan had knowledge of the fact. It is clear that at the time the mortgage was executed and delivered at Prow's office, and the last money was advanced, and

at the time the two hundred dollars was loaned, the bankrupt was insolvent, and from all the evidence, I am unable to escape the conclusion that Monyhan had knowledge of this fact, but I do not think Monyhan is shown to have acted in bad faith within the meaning of the statute, in taking the mortgage, so far as it covered the money advanced at the time of its execution, and the two hundred dollars loaned with a promise of security as stated. The exceptions are overruled and disallowed as to all of the claim, except the three hundred dollars loaned in 1871. In all other respects the opinion and finding of the register are approved.